# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY LARSON,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>Defendant. | NO. EDCV 10-069 AGR<br><br>**MEMORANDUM OPINION AND ORDER** |

Larry Larson filed this action on February 3, 2010. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge on March 4, 2010. (Dkt. Nos. 8, 9.) On October 7, 2010, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The Court has taken the matter under submission without oral argument.

Having reviewed the entire file, the Court affirms the decision of the Commissioner.

///

///

///

///

# I.

## PROCEDURAL BACKGROUND

On November 16, 2005, Larson filed an application for disability insurance benefits. Administrative Record ("AR") 8. On December 13, 2005, Larson filed an application for supplemental security income benefits. *Id.* In both applications, Larson alleged a disability onset date of December 3, 2004. *Id.* The applications were denied initially and upon reconsideration. AR 42-46, 48-52. Larson requested a hearing before an Administrative Law Judge ("ALJ"). AR 18. On July 2, 2008, the ALJ conducted a hearing at which Larson and a vocational expert ("VE") testified. AR 19-37. On August 1, 2008, the ALJ issued a decision denying benefits. AR 5-17. On December 11, 2009, the Appeals Council denied the request for review. AR 1-3. This action followed.

# II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the Court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

///

# III.
# DISCUSSION

## A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

## B. The ALJ's Findings

The ALJ found that Larson meets the insured status requirements through December 31, 2009. AR 10.

Larson has the severe impairments of cervical and lumbar discogenic disease. *Id.* Larson has the residual functional capacity to perform light work, except he "has occasional postural restrictions and cannot work with ladders, ropes or scaffolds," "cannot tolerate concentrated exposure to cold or vibrations," and "is limited to occasional overhead reaching with his left nondominant arm." AR 11. The ALJ found Larson is unable to perform his past relevant work as a welder, but can perform jobs that exist in significant numbers in the national economy, such as electrical assembler and information clerk. AR 15-16.

## C. Treating Physician

Larson argues that the ALJ improperly rejected the opinion of his treating physician, Dr. Chae.

An opinion of a treating physician is given more weight than the opinion of a non-treating physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). To reject an uncontradicted opinion of a treating physician, an ALJ must state clear and convincing reasons that are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). When, as here, a treating

physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record. This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Orn*, 495 F.3d at 632 (citations omitted and internal quotations omitted). When the ALJ declines to give a treating physician's opinion controlling weight, the ALJ considers several factors, including the following: (1) the length of the treatment relationship and frequency of examination;[1] (2) the nature and extent of the treatment relationship;[2] (3) the amount of relevant evidence supporting the opinion and the quality of the explanation provided; (4) the consistency with the record as a whole; and (5) the specialty of the physician providing the opinion. *See Orn*, 495 F.3d at 631; 20 C.F.R. § 404.1527(d)(1)-(6). "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Thomas*, 278 F.3d at 956-57 (citation and quotation marks omitted).

An examining physician's opinion constitutes substantial evidence when it is based on independent clinical findings. *Orn*, 495 F.3d at 632. However, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" *Id.* at 632. A non-examining physician's opinion constitutes substantial evidence when it is supported by other evidence in the record and is consistent with it. *Andrews v. Shalala*, 53 F.3d

---

[1] "Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source." 20 C.F.R. § 404.1527(d)(2)(I).

[2] "Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion." 20 C.F.R. § 404.1527(d)(2)(ii).

4

1035, 1041 (9th Cir. 1995). A non-examining physician's opinion cannot by itself constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1066 n.2 (9th Cir. 2006).

The ALJ noted that the objective medical findings by the treating physicians and examining physician were generally consistent. AR 14. The ALJ gave greater weight to the opinion of the examining physician, Dr. Sabourin, "in assigning limitations as a result of those findings" because Dr. Sabourin is an orthopedic surgeon. AR, 14, 141-45. As the ALJ noted, Dr. Chae had recommended a referral to an orthopedic surgeon.[3] AR 13, 166, 169. Dr. Chae "had only examined [Larson] on one occasion" at the time of her musculoskeletal report and "her conclusions appeared to be based on subjective complaints." The ALJ properly considered Dr. Chae's specialty, the length of treatment, and the extent to which her opinion was based on subjective complaints. *See* 20 C.F.R. § 404.1527(d)(1)-(6).

Dr. Chae first examined Larson at the Riverside Medical Clinic ("RMC") on February 14, 2006. AR 12, 171. The ALJ acknowledged Larson had been treated at RMC by other physicians since February 2003 and summarized those records. AR 12. In February 2003, Larson complained of cervical spine myalgia with left arm neuralgic pain. AR 12, 121. The examination notes reflected: "Cervical spine range of motion was reduced and there was 1+ left trapezius muscle spasm. Motor function was 5 x 5 and [Larson] had subjective neurological deficit . . . on the left hand. Grip was well maintained and peripheral pulses were adequate." AR 12, 121. In April 2004, Larson was treated for tendonitis in his right arm, for which he received a prescription for a splint and sling. AR 12, 124. In August 2004, Larson had generalized degenerative joint disease and obtained refills of Effexor and Vioxx. AR 12, 127. In April 2005,

---

[3] Dr. Chae's notes indicate Larson refused the referral "stating that he cannot afford them." AR 169.

5

Larson complained of neck and knee problems. AR 12, 128. He was assessed with worsening degenerative joint disease and disk disease, cervical spine and bilateral knees. AR 12, 129. He was prescribed Vicodin for pain. AR 12, 128. In May 2005, the "subjective" note indicates Larson had a history of arthritis and neck pain secondary to cervical discogenic disease with bilateral spinal stenosis. AR 12, 133. He was doing well on Neurontin and his neck pain improved, but he continued to have radiating pain to his arms. AR 12, 133. In July 2005, he complained of worsening symptoms. The sensory examination showed tingling in the fingers of both hands. AR 12, 135. In November 2005, RMC suggested Larson be referred to a neurologist, but he could not afford it. AR 12, 137.

According to Dr. Chae's notes of her first examination on February 14, 2006, Larson reported he had a 15-year history of pain, with a history of cervical and lumbar spinal stenosis and chronic left shoulder pain. AR 13, 171. Larson reported he could not walk well, was "in agony" with minimal attempts to work, and needed to apply for disability. AR 171. Dr. Chae noted reduced range of motion in the left shoulder, 4/5 strength in the left leg, unstable gait, and spasm and tenderness in the cervical and lumbar spine. AR 13, 171. She recommended orthopedic referral. AR 13, 171.

The ALJ noted that on February 15, 2006, Dr. Chae completed a Musculoskeletal Report and stated it was difficult to answer some questions because the patient was new to her. AR 138. She diagnosed cervical stenosis, lumbar stenosis and shoulder adhesive capsulitis. AR 138. She noted Larson had a cervical spine fusion with minimal relief. AR 140. She reported Larson had minimal flexion and extension of the neck and decreased leg strength of 4/5. AR 138. There was no swelling, effusion or tenderness, and straight leg raising was negative. AR 138. Dr. Chae stated Larson "cannot raise arms above horizontal" and could stand for less than five minutes. AR 139. She opined he would benefit from a cane for short and long distances. AR 139.

Dr. Sabourin, an orthopedic surgeon, examined Larson on April 4, 2006 and reviewed a report from RMC. AR 13, 141, 144-45. Larson complained of pain in the neck, shoulders, elbows, wrists, hands, upper back, lower back, feet, hips, and knees. His back pain had worsened and he had left hip pain for the past 18 months. He complained of sharp, dull, throbbing, burning pain with standing, sitting, walking, bending or lifting, but he did not use an assistive device to walk. AR 141. Larson was able to sit and stand with normal posture, and sat comfortably during the examination. Gait was normal. Larson had some reduced range of motion in the cervical spine. Range of motion of the lumbar spine was grossly normal with pain at the extremes. Range of motion in the shoulders, elbows, wrists, hands, fingers, ankles and feet was normal and painless. Range of motion in the hips and knees was normal with little in the way of pain. AR 143-44. Motor strength was 5/5 in all extremities. Larson had decreased sensation from hands to the elbows bilaterally and along lateral calf on right leg. AR 144. X-rays taken on the same day showed mild congenital dysplasia of the left hip and a left knee within normal limits. AR 144. Dr. Sabourin diagnosed degenerative disc disease of cervical spine, status post cervical fusion, lumbar strain and sprain, mild congenital dysplasia of the left hip with early osteoarthritis of the left hip, and left knee strain and sprain syndrome. AR 144-45. Dr. Sabourin concluded Larson could lift and carry 20 pounds occasionally and 10 pounds frequently. He could stand or walk for 6 hours in an 8 hour workday and climb, stoop, kneel and crouch occasionally. AR 145. The state agency physician agreed with Dr. Sabourin's functional assessment. AR 148-55.

      The ALJ properly weighed the medical opinions and gave more weight to Dr. Sabourin's opinion because of his specialty in orthopedic surgery. 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5); *Orn*, 495 F.3d at 632 (examining physician's opinion constitutes substantial evidence when supported by independent clinical findings). The ALJ properly considered Dr. Chae's single examination of Larson

7

at the time she completed the report. 20 C.F.R. § 404.1527(d)(2)(i) (length of treatment). When, as here, the claimant does not challenge the ALJ's credibility finding, an ALJ may properly discount a treating physician's opinion to the extent it is based on subjective complaints of pain. *See Thomas*, 278 F.3d at 957. Moreover, rejection of a treating physician's opinion does not by itself trigger a duty to contact the physician for explanation. *McLeod v. Astrue*, 634 F.3d 516, 520 (9th Cir. 2011). The medical records are in the record, and the ALJ made no finding that the evidence was ambiguous or that the record was inadequate to allow for proper evaluation. *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) ("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."). The ALJ did not err.

### D. <u>Medical Equivalency to Listed Impairment</u>

Larson contends that the ALJ erred in finding that Larson did not meet or equal listing 1.04, Disorders of the Spine. JS 18.

At step three, the claimant bears the burden of demonstrating his impairments are equivalent to a listed impairment that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. *Bowen v. Yuckert*, 482 U.S. 137, 141, 146 n.5, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). "If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step." *Id.* at 141; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(4)(iii), 416.920(4)(iii).

"The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990) (citation omitted and emphasis in original). "For a

claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* at 530 (emphasis in original).

"To *equal* a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment, or, if a claimant's impairment is *not* listed, then to the listed impairment 'most like' the claimant's impairment." *Tackett*, 180 F.3d at 1099 (emphases in original); 20 C.F.R. § 404.1526. "'Medical equivalence must be based on medical findings.' A generalized assertion of functional problems is not enough to establish disability at step three." *Tackett*, 180 F.3d at 1100 (citation omitted).

"An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).

The ALJ reviewed the medical evidence and found Larson "does not meet the specific requirements of Listings 1.02, 1.04 or 12.04." AR 11-15. Larson argues his impairments meet or equal Listing 1.04, which requires a disorder of the spine, resulting in compromise of a nerve root or the spinal cord with either: "A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);" "B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2

9

hours;" or "C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.

With respect to Listing 1.04A, the ALJ noted that Larson had two negative straight-leg raising tests and no positive tests. AR 13-14, 138, 143. Dr. Sabourin found normal motor strength on both sides and normal range of motion of the lumbar spine, except at the extremes. AR 143, 145. Dr. Chae found some motor loss on the left side in February 2006, without accompanying sensory or reflex loss, but found normal motor strength on both sides in August 2006. AR 138, 166.

With respect to Listing 1.04C, the ALJ concluded Larson could ambulate effectively. AR 13. The ALJ noted that both Dr. Chae and Dr. Sabourin observed that Larson did not use any assistive devices to walk. AR 13, 139, 141, 142. The ALJ recognized that while Dr. Chae opined that Larson could benefit from the use of a cane, there are no subsequent treatment records showing that Larson used an assistive device or that his gait was unstable. AR 13-14. The ALJ also accepted the functional assessments of Dr. Sabourin and the state agency physician who concluded that Larson could stand and walk for 6 hours in an 8 hour workday and climb, stoop, kneel and crouch occasionally. AR 13, 148-55. There was no evidence of spinal arachnoiditis.

Larson offers no theory as to how his impairments combined to equal a listed impairment. *Lewis*, 236 F.3d at 514 (claimant did not satisfy burden to prove that he equaled a listing when he "offered no theory, plausible or otherwise, as to how his [impairments] combined to equal a listed impairment . . . [n]or has he pointed to evidence that shows that his combined impairments equal a listed impairment."). Nor did he make such an argument to the ALJ. *See Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) ("An ALJ is not required to discuss

10

the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence.").

Here, the ALJ evaluated and discussed the medical evidence throughout the decision and determined Larson did not meet or equal a listing.[4] AR 12-14. The ALJ did not err.

### E. **Hypothetical Question**

Larson argues that the ALJ's hypothetical to the VE did not include "that [Larson's] treating physician has opined that due to [Larson's] unsteady gait, he would benefit from the use of a cane and that [Larson] can stand for less than 5 minutes without the assistive device." JS 25. An ALJ may rely on testimony a VE gives in response to a hypothetical that contains "all of the limitations that the ALJ found credible and supported by substantial evidence in the record." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217-18 (9th Cir. 2005).

The ALJ found that the evidence did not establish that Larson was unable to stand for more than five minutes without the use of an assistive device. Both Dr. Chae and Dr. Sabourin observed that Larson did not use an assistive device to walk. AR 13, 139, 141-42. Although Dr. Chae noted in February 2006 that Larson's gait was unsteady and he could benefit from a cane, there is no indication in the record that Larson used a cane or that his gait was unsteady after February 2006. AR 13, 139. In April 2006, Dr. Sabourin noted Larson could toe and heel walk within normal limits, showed no evidence of a tilt or list, and

---

[4] *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) ("[i]t is unnecessary to require the Secretary, as a matter of law, to state why a claimant failed to satisfy every different section of the listing of impairments."). In *Gonzalez*, the Ninth Circuit found that the ALJ's summary of the medical evidence and the claimant's testimony was sufficient, even though the ALJ did not state what evidence supported the conclusion that the impairments did not meet or equal the listings. *Id.* at 1200-01. "To require the ALJ's to improve their literary skills in this instance would unduly burden the social security disability process." *Id.* at 1201; *see also Lewis*, 236 F.3d at 513 (ALJ need not discuss and evaluate evidence that supports his or her conclusion under a specific heading).

11

walked with a normal gait.  AR 142.  The ALJ is not required to include limitations in a hypothetical that are not in his findings.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001).  The ALJ did not err by excluding those limitations in the hypothetical to the VE.

## IV.
## ORDER

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: May 5, 2011

                                             */s/ Alicia G. Rosenberg*
                                             ALICIA G. ROSENBERG
                                           United States Magistrate Judge